UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUMASENSE TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ADVANCED ENGINEERING SERVICES, LLC, <br><br> Defendant. | Case No. 20-cv-07905-WHO <br><br> **ORDER DENYING MOTION TO STRIKE AND MOTION TO DISMISS** <br><br> Re: Dkt. No. 23 |

## INTRODUCTION

In this action, plaintiff LumaSense Technologies, Inc. ("LumaSense") alleges that defendant Advanced Engineering Services, LLC ("AES") infringed several of LumaSense's trademarks and copyrighted materials. AES moves to strike the claims under California's anti-SLAPP rule and dismiss under 12(b)(6), arguing that LumaSense's claims are based exclusively on AES's protected petitioning activity of filing materials in a related and ongoing state court action between the same parties. LumaSense responds that its claims are not based on AES's state court filing. For the reasons discussed below, I conclude that AES's motions are based primarily on a misreading of LumaSense's Complaint. AES's motion to strike and motion to dismiss are DENIED.

## BACKGROUND

LumaSense designs and develops sensing technology to detect, measure, and analyze process conditions in power-intensive industries. Dkt. No. 1 ("Compl.") ¶ 7. Its products include fiber optic temperature ("FOT") sensors and non-dispersive infrared ("NDIR") sensors. *Id.* It designs its sensors so they can be customized for specific customers and applications. *Id.* ¶ 8. It may perform these customizations and integrations or may sell customers off-the-shelf baseline

products that the customers then integrate into their products on their own. *Id.* It may also work with a third party to pursue new applications for its sensors and assist customers in integrating LumaSense's products. *Id.* ¶ 15.

In 2013, AES president Akhil Seth approached LumaSense with a business proposal. *Id.* ¶ 16. Seth allegedly asserted that he had personal relationships with companies in need of FOT and NDIR sensors, understood their specific needs, and could perform customization and integration for these potential users. *Id.* The parties entered into a Value Added Reseller Agreement ("VAR Agreement") that granted AES a limited license to purchase LumaSense's trademark, copyright, and patent-protected FOT and NDIR sensors, modify them for customer integration, and resell them to a group of agreed-upon customers ("VAR Customers"). *Id.* ¶ 17.

LumaSense alleges that the VAR Agreement gave AES the exclusive right to sell customized sensors developed under the agreement, but did not preclude LumaSense from continuing to sell its baseline products. It further alleges that the parties did not enter into the VAR Agreement to develop a new product or product lines. *Id.* ¶ 19.

On August 23, 2018, AES filed a lawsuit against LumaSense in Santa Clara Superior Court, alleging eight different causes of action arising out of the VAR Agreement. *Id.* ¶ 21. AES's lawsuit includes a claim for misappropriation of trade secrets. *Id.* ¶ 22. AES alleges that it provided confidential trade secret information to LumaSense under the VAR Agreement and that LumaSense used that information to develop new FOT and NDIR sensors that it sold to VAR Customers without informing or compensating AES. *Id.*

LumaSense disputes the allegations in the state court action and filed a motion to compel AES to identify the specific trade secrets it disclosed to LumaSense. *Id.* ¶ 24. In response, AES filed a confidential disclosure statement under seal, which included exhibits purporting to identify AES's trade secrets. *Id.*

LumaSense alleges that the exhibits AES included with its disclosure statement in state court "contained the protected and registered intellectual property of LumaSense." *Id.* ¶ 25. It asserts that AES used LumaSense's trademarks on its own and removed LumaSense's trademark identifiers and registered symbols. *Id.* ¶ 26. For example, AES created a product label for an FOT

2

probe that included LumaSense's registered trademarks "LumaSense" and "Fluoroptic." *Id.* ¶ 27. AES also allegedly used LumaSense's registered trademark "LumaSense Technologies" in a "certificate of compliance." *Id.* ¶ 28. AES allegedly sent the product label and certificate of compliance to at least one customer, AKT America Inc. ("AKT").

LumaSense also alleges that AES attached product drawings to its disclosure statement that directly copied and/or were derived from LumaSense's copyright protected technical drawings. *Id.* ¶ 30. AES represented to the court that it has provided these drawings to LumaSense. *Id.* LumaSense alleges that it "raised these concerns and identified the infringing actions performed by AES in the state court proceeding" but that "AES has not amended its Disclosure Statement and continues to claim LumaSense's trademarks and copyrighted works as its own." *Id.* ¶ 31.

LumaSense brings claims for copyright infringement, trademark infringement, false designation of origin, and common law unfair competition. *Id.* ¶¶ 32-64. AES moves to strike the Complaint under California's Anti-SLAPP rule and to dismiss the action under 12(b)(6). Dkt. No. 23-1 ("Mot.").

**LEGAL STANDARD**

**I.    MOTION TO STRIKE**

California Code of Civil Procedure 425.16 "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). These lawsuits are also known as "Strategic Lawsuits Against Public Participation," or "SLAPPs." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013). Under section 425.16 a party may file an "anti-SLAPP motion" to strike "a cause of action based on an act in furtherance of [the] right to petition or free speech." *Metabolife*, 264 F.3d at 840 (internal quotations omitted).

In ruling on an anti-SLAPP motion, a court engages in a two-step process. *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002). Under step one, the court assesses whether the moving party has made "a prima facie showing that the lawsuit arises from an act in furtherance of its First Amendment right to free speech." *Nat'l Abortion Federation v. Center for*

3

*Medical Progress*, Case No. 15-cv-03522-WHO, 2015 WL 5071977, at *3 (N.D. Cal. Aug. 27, 2015).

> At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached.

*Baral v. Schnitt*, 1 Cal. 5th 376, 398 (2016).

If the moving party can establish step one, the burden shifts to the non-moving party which must then show a reasonable probability that it will prevail on its claim. *Makaeff*, 715 F.3d at 261. "For a plaintiff to establish a probability of prevailing on a claim, he must satisfy a standard comparable to that used on a motion for judgment as a matter of law." *Price v. Stossel*, 620 F.3d 992, 1000 (9th Cir. 2010). This standard requires that a claim be dismissed if the plaintiff presents an insufficient legal basis, or if no reasonable jury would find in its favor. *Metabolife*, 264 F.3d at 840; *see also Price*, 620 F.3d at 1000 (an anti-SLAPP motion will be granted if the plaintiff "presents an insufficient legal basis for the claims or when no evidence of sufficient substantiality exists to support a judgment for the plaintiff.") (internal quotations omitted).

## II.     MOTION TO DISMISS

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

4

Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

### I.  MOTION TO STRIKE

AES moves to strike all four of LumaSense's claims under California's anti-SLAPP rule, arguing that the claims arise out of AES's protected first amendment activity of filing materials in an ongoing state court action. *See* Mot. at 4-6, 13. LumaSense opposes the motion arguing that: (1) California's anti-SLAPP rule does not apply to the three federal claims; and (2) the one California claim arises out of AES's general infringement and misuse of LumaSense's intellectual property, not the state court filing. Opp. at 4-6. As discussed in more detail below, California's anti-SLAPP rule does not apply to federal causes of action and LumaSense's single California cause of action does not arise out of AES's protected litigation activity. Accordingly, I will deny AES's motion to strike.

The Ninth Circuit has made clear that California's "anti-SLAPP statute does not apply to federal law causes of action." *Hilton v. Hallmark Cards*, 599 F.3d 894, 901. AES does not dispute this in its reply; the out-of-circuit cases it cites in its moving papers are inapplicable. AES's motion to strike is denied as to the first, second, and third causes of action.

The anti-SLAPP statute does apply to LumaSense's fourth cause of action for unfair competition under California law. "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them." *Baral*, 1 Cal. 5th at 398. In its moving papers, AES asserts that "LumaSense's common law unfair competition claim is predicated entirely on AES's filing of the confidential Disclosure Statement in the pending State Action." Mot. at 6. But this assertion is not supported by the Complaint.

LumaSense alleges in its Complaint that in response to a motion to compel, AES filed a disclosure statement in the state court action containing a number of exhibits purporting to identify

5

AES's trade secrets. Compl. ¶ 24. It says that in these exhibits, "AES misappropriated LumaSense's trademark and copyright-protected works in such a way as to imply ownership," including by "us[ing] LumaSense's trademarks as its own and remov[ing] LumaSense's trademark identifiers and registered symbols." *Id.* ¶¶ 25-26. It asserts that AES used LumaSense's federally registered trademarks "LumaSense" and "Fluoroptic" on a product label and its trademark "LumaSense Technologies" on a "certificate of compliance," both of which were sent to LumaSense's longtime customer, AKT America Inc. *Id.* ¶¶ 26-29. Specifically with regard to its unfair competition cause of action, LumaSense contends that "[t]he acts and conduct of AES as alleged above in this Complaint constitute unfair competition pursuant to the common law of the State of California" and "are likely to cause confusion and mistake among customers and the public as to the origin or association of AES's infringing use of, and passing off of, LumaSense's marks, name, and visual designs." *Id.* ¶¶ 61-62. It further states that "AES's conduct as alleged above has damaged LumaSense and resulted in illicit gain of profit to AES in an amount that is unknown at the present time." *Id.* ¶ 63.

Based on these allegations, it appears that LumaSense's common law unfair competition claim arises out of AES's alleged misuse of its registered trademarks on documents that AES sent to customers, not out of AES's litigation activity in state court. LumaSense makes no reference to the state court filing in its specific allegations regarding its unfair competition claim. Instead, it alleges that AES's conduct is likely to cause confusion among "customers and the public" and has "resulted in illicit gain of profit to AES." Both of these statements indicate the claim arises out of AES's customer-facing conduct, not its litigation activity, as AES's filing documents under seal in state court is not likely to result either in customer confusion or illicit gain of profit. For these reasons, I conclude that AES has failed to carry its burden of establishing that California's anti-SLAPP rule applies to LumaSense's fourth cause of action.

Because AES has failed to carry its burden of demonstrating that the anti-SLAPP rule applies to any of LumaSense's claims, the inquiry ends. AES's motion to strike is DENIED.

## II. MOTION TO DISMISS

AES moves to dismiss all four of LumaSense's claims under 12(b)(6) on the bases that (1)

6

1    AES's reproduction of LumaSense's trademarks in the state court action constitutes fair use; (2)
2    LumaSense has failed to allege damages; (3) the alleged conduct is not actionable under the
3    Noerr-Pennington doctrine; and (4) the alleged conduct is not actionable under California's
4    litigation privilege.  These arguments are not persuasive.

### A.   Fair Use

AES argues that all of LumaSense's claims must be dismissed because they are "premised solely on AES's filing of a confidential Disclosure Statement in the State Action" and that this conduct is permissible as fair use. Mot. at 9. This argument fails; LumaSense's claims are not based exclusively on AES's in court reproduction of its trademarks and copyrighted materials. Rather, LumaSense alleges that AES copied LumaSense's trademarked and copyrighted materials on documents prepared well before the state court action and then recently filed the documents in state court.  As discussed above, LumaSense has alleged that AES misappropriated LumaSense's registered trademarks on documents sent to customers, outside the litigation context.  In addition, LumaSense has attached copies of some of the allegedly infringing documents that appear to closely reproduce certain copyrighted and registered technical drawings owned by LumaSense. *See* Compl. Ex. 7.  At least two of the documents, with legible notations, date back to 2015, *see id.*, long before the state court action commenced.  These documents, which are attached to and incorporated into LumaSense's Complaint, indicate that AES infringed on LumaSense's protected copyright material outside the litigation context.

In its reply, AES argues that even if I consider the underlying copying that went into creating the documents filed in the state court action, AES's conduct still constitutes fair use because "the amount of LumaSense's property used was small and insubstantial, and AES's use could have had only a minimal effect on the potential market for or value of LumaSense's product." Reply at  7.  This novel argument, raised for the first time in reply, is improper.

In addition, AES does not cite any authority to support this argument and Ninth Circuit law does not support its position.  "De minimis" use, which AES seems to be invoking in its reply, is an affirmative defense to copyright infringement with limited application at the motion to dismiss stage.  For this defense to justify dismissal of the Complaint at the pleading stage the defense must

7

(1) "clearly appear on the face of the pleading" and (2) "may not raise disputed issues of fact." *Synopsys, Inc. v. InnoGrit, Corp.*, Case No. 19-cv-02082-LHK, 2019 WL 4848387, at *12 (N.D. Cal. Oct. 1, 2019). While insubstantial copying can be permitted under the Ninth Circuit's "de minimis" standard, "a use is de minimis only if the average audience would not recognize the appropriation." *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004). The amount of property used and the impact on the commercial market are not relevant – what matters is whether the copied work is identifiable in the reproduction to a reasonable observer. Here, the technical drawings on AES's documents are strikingly similar to LumaSense's copyrighted works. It is not clear from the face of the Complaint, nor are there indisputable facts, that AES's use of LumaSense's copyrighted works was "de minimis." The defense cannot justify dismissal at this stage.

AES has failed to demonstrate that the affirmative defenses of "fair use" and "de minimis" use justify dismissal at the motion to dismiss stage.

### B. Alleged Harm

AES argues that LumaSense has failed to allege any harm or damages because AES filed its disclosure statement in state court under seal, making it impossible for AES's allegedly infringing conduct to confuse customers or the public. Mot. at 9. This argument ignores both that infringement alone is sufficient to state a claim for copyright infringement and that LumaSense has alleged AES misused its registered trademarks on documents sent to consumers.

To establish a prima facie copyright infringement claim a plaintiff must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991). Because infringement of an intellectual property right is itself an injury, a plaintiff need not separately allege customer confusion to state a claim for copyright infringement. Here, LumaSense has alleged that it has a valid copyright in various technical drawings and that AES copied these drawings in the documents it prepared and reproduced in the state court action. This is sufficient to state a copyright claim; AES has not rebutted or disputed either of these key allegations.

LumaSense has also adequately alleged the requisite injury to make out its trademark infringement, false designation of origin, and common law unfair competition claims, all of which share the same basic elements. To make out a trademark infringement claim, a plaintiff must allege that a defendant used its registered trademark or marks and that "the defendant's use of its trademarks is likely to cause confusion, or to cause mistake, or to deceive." *Adobe Systems Inc. v. Christenson*, 809 F.3d 1071, 1081 (9th Cir. 2015). "The elements of a claim for false designation of origin under § 1125 are virtually the same as the elements of a claim for trademark infringement under § 1114, although a § 1114 claim requires ownership of a registered trademark while a § 1125 claim does not." *Iglesia Ni Cirsto v. Cayabyab*, Case No 18-cv-00561-BLF, 2019 WL 2997474, *10 (Aug. 23, 2019). And "[t]he Ninth Circuit has held that a common law unfair competition claim for trademark exploitation is analogous to a Lanham Act claim and may be analyzed under the same standard." *Rise Basketball Skill Development, LLC v. K Mart Corp.*, Case No. 16-cv-04895-WHO, 2017 WL 2775030, at *3 (N.D. Cal. June 27, 2017).

LumaSense has alleged that "AES misappropriated LumaSense's trademark and copyright-protected works in such a way as to imply ownership" including by "us[ing] LumaSense's trademarks as its own and remov[ing] LumaSense's trademark identifiers and registered symbols." *Id.* ¶¶ 25-26. Specifically, LumaSense stated that AES used LumaSense's registered trademarks "LumaSense" and "Fluoroptic" on a product label and its trademark "LumaSense Technologies" on a "certificate of compliance," both of which were sent to LumaSense's longtime customer, AKT America Inc. *Id.* ¶¶ 26-29. These allegations support a plausible inference that AES's alleged use of LumaSense's trademarks is "likely to cause confusion" and are sufficient to state a claim for trademark infringement, false designation of origin, and common law unfair competition.

For these reasons, LumaSense has adequately alleged injury, and the relevant elements, on each of its causes of action.

### C.     Noerr-Pennington Doctrine

AES argues that the *Noerr-Pennington* doctrine provides complete immunity to AES based on claims arising out of its state court petitioning activity and justifies dismissing all four claims

with prejudice. I disagree.

The *Noerr-Pennington* doctrine is a doctrine of statutory construction that "derives from the Petition Clause of the First Amendment and provides that 'those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643 (9th Cir. 2009). The Supreme Court has "extended the doctrine to provide immunity for the use of the channels and procedures of state and federal courts to advocate causes." *Id.* at 644 (internal quotations omitted). The Supreme Court has adopted a three-part test to use in applying the doctrine: "(1) identify whether the lawsuit imposes a burden on petitioning rights, (2) decide whether the alleged activities constitute protected petitioning activity, and (3) analyze whether the statutes at issue may be construed to preclude that burden on the protected petitioning activity." *Id.* While most petitioning activity implicates *Noerr-Pennington*, the doctrine excludes certain petitioning conduct under the "sham" exception. *Id.* "The Ninth Circuit has held that a defendant's activities may fall into this exception if they include making intentional misrepresentations to the court that then deprives the litigation of its legitimacy." *Id.*

AES has invoked *Noerr-Pennington* but has not explained how it would or should be applied here as a doctrine of statutory construction. As discussed above, the bulk of LumaSense's claims arise out of AES's alleged infringement of LumaSense's trademarks and copyrights outside the litigation context. The doctrine would not apply to, and would therefore not bar, the claims to the extent they are based on such conduct unrelated to AES's petitioning activity.

Further, on the facts alleged in the Complaint, the "sham" exception bars application of the *Noerr-Pennington* doctrine to AES's litigation-related conduct at the pleading stage. The Ninth Circuit has held that the sham litigation exception applies when the defendant's petitioning activity "consists of making intentional misrepresentations to the court" and those misrepresentations or the "party's knowing fraud upon . . . the court deprive the litigation of its legitimacy." *Kottle v. Northwest Kidney Centers*, 146 F.3d 1056, 1060 (9th Cir. 1998). In *Kearney*, the Ninth Circuit emphasized that when assessing the "sham" exception at the pleading stage, the plaintiffs' "allegations must be assumed true." 590 F.3d at 646.

10

1	In its Complaint, LumaSense has alleged that AES has filed documents in which it
2	misrepresents LumaSense's intellectual property as its own and that LumaSense has raised
3	concerns with the court over this alleged infringement and "identified the infringing actions
4	performed by AES" but that AES "has not amended its Disclosure Statement and continues to
5	claim LumaSense's trademarks and copyrighted works as its own." Compl. ¶ 31. These
6	allegations, taken as true at the pleading stage, are sufficient to trigger the sham exception because
7	LumaSense has alleged that AES knowingly misled the state court on substantive issues related to
8	the alleged trade secrets at issue in that action. *See Kearney*, 590 F.3d at 647 (court erred in
9	failing to apply sham exception at the pleading stage). Accordingly, I conclude that on the facts
10	alleged, AES's alleged state court conduct fits within the "sham" exception and the *Noerr-*
11	*Pennington* doctrine does not apply.

### D. Litigation Privilege

AES argues that California's litigation privilege bars all of LumaSense's claims. I disagree. California's litigation privilege does not apply to federal causes of action and LumaSense's common law unfair competition claim does not arise out of AES's litigation related activity.

California's litigation privilege creates an immunity for any "publication or broadcast" made in a "judicial proceeding." Cal. Civ. Code § 47. For the same reasons discussed above, the privilege is not relevant to LumaSense's fourth cause of action – common law unfair competition – because the claim dose not arise out of AES's litigation conduct.

The litigation privilege also does not apply to LumaSense's three federal causes of action. As the Ninth Circuit has noted, state court privileges do not apply in federal court to federal claims. "In federal question cases, the law of privilege is governed by 'the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." *Religious Tech. Ctr. v. Wollersheim*, 971 F.2s 364, 367 n.10 (9th Cir. 1992). As the *Wollersheim* court further explained, "we have found [no cases] indicating sch a privilege has been recognized as a matter of federal common law." *Id.*

AES dismisses the Ninth Circuit's comments in *Wollersheim* as dicta, but fails to identify

11

any case in which a federal court has recognized a privilege akin to California's litigation privilege as a part of federal common law. In its opposition, LumaSense cites numerous cases in which federal courts have held the opposite and declined to apply California's litigation privilege to federal causes of action. *See e.g. Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 851 (9th Cir. 2004) ("A state absolute litigation privilege purporting to confer immunity from suit cannot defeat a federal cause of action."); *Perez v. Wells Fargo Bank, N.A.*, No. C-11-02279 KCS, 2011 WL 3809808, at *12 (N.D. Cal. Aug. 29, 2011) (holding that state litigation privileges are not applicable to federal claims); *OEI v. N. Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089 (C.D. Cal. 2006) (holding that California litigation privilege did not apply to Fair Debt Collection Practices Act claim). As these cases have held, California's litigation privilege does not apply to federal claims; I will not apply the California litigation privilege to LumaSense's federal claims.

### E. Reply Arguments

AES raises several new arguments in its reply briefing including that AES's conduct was expressly permitted by terms of the VAR Agreement and that LumaSense's claims are time barred. "It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers." *Dragu v. Motion Pictur Indus. Health Plan for Active Participants*, 144 F. Supp. 3d 1097, 1113 (N.D. Cal. 2015); *State of Nev. v. Watkins,* 914 F.2d 1545, 1560 (9th Cir.1990) ("[Parties] cannot raise a new issue for the first time in their reply briefs." (citations omitted)); *United States v. Romm,* 455 F.3d 990, 997 (9th Cir.2006) (citing *Smith v. Marsh,* 194 F.3d 1045, 1052 (9th Cir.1999)); *Cedano–Viera v. Ashcroft,* 324 F.3d 1062, 1066 n. 5 (9th Cir.2003) ("[W]e decline to consider new issues raised for the first time in a reply brief."); *Bazuaye v. INS,* 79 F.3d 118, 120 (9th Cir.1996) ("Issues raised for the first time in the reply brief are waived."). As a result, I decline to consider these additional untimely arguments.

**CONCLUSION**

For the reasons discussed above, AES's motion to strike and motion to dismiss are DENIED.

**IT IS SO ORDERED.**

Dated: March 30, 2021



William H. Orrick
United States District Judge